UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL SHEAFFER,

    *Plaintiff*,

v.

SUPERIOR TANK LINES NORTHWEST DIVISION, LLC,

    *Defendant.*

CASE NO. 2:19-cv-00190-BJR

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND

## I. INTRODUCTION

Plaintiff Michael Sheaffer instituted this employment discrimination action against his former employer Defendant Superior Tank Lines Northwest Division, LLC ("Superior"), alleging: (1) willful withholding of wages, (2) wrongful termination in violation of public policy, and (3) sex discrimination. Dkt. No. 1, Ex. 2. Superior moves to dismiss with prejudice Plaintiff's wrongful termination and sex discrimination claims pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 8. Plaintiff opposes the motion or, in the alternative, seeks leave to file an amended complaint. Dkt. No. 12. Having reviewed the motion, opposition thereto, the record of the case, and the relevant legal authorities, the Court will grant the motion. The reasoning for the Court's decision follows.

## II. FACTUAL BACKGROUND

Defendant, a California-based regional transport company specializing in refined petroleum products, hired Plaintiff as an equipment expert in February 2017. Dkt. No. 1, Ex. 2 at ¶ 2.1. In this role, Plaintiff's primary duty was to repair and maintain the company's fleet of trucks. ¶ 2.2. Plaintiff contends that he was often required to work past business hours and respond to after-hours work calls and emails. ¶ 2.3, 2.6. He claims he was not appropriately compensated for time spent working "outside normal business hours." ¶ 2.4.

Plaintiff also alleges that one of his coworkers would often bring a loaded handgun to work and leave it "lying around his worksite." *Id.* at ¶ 2.9. Plaintiff complained to his manager about the presence of the gun at work and inquired as to whether Superior maintained a weapons policy. ¶ 2.10, 2.11. His manager, informed Plaintiff that no such policy existed and took no further action with respect to the gun. *Id.* "After several months of complaining to his manager" about the presence of the gun at work, Plaintiff decided to escalate his concern to the human resources office at Superior's headquarters in California. ¶ 2.12. He was then contacted by an HR representative who informed Plaintiff that the company maintained a "company-wide, zero-tolerance weapons policy" and that she would address his concerns. *Id.*

Plaintiff claims that after he spoke to the HR representative, the administrator at the branch office where he worked "came to him at work and started cursing at him for contacting HR." *Id.* at ¶ 2.13. According to Plaintiff, the administrator is also the wife of his manager. *Id.* Plaintiff reported the incident to his manager who, according to Plaintiff, informed him that he would not fire the administrator. ¶ 2.14. When Plaintiff asked whether he would have been fired if he cursed at a colleague, his manager purportedly "answered in the affirmative." *Id.*

2

Plaintiff then reported the entire interaction, regarding both the administrator and the manager, to Superior's human resources office. In response, the human resources office dispatched a Vice President to the branch office with a list of "'dos' and 'don'ts'" for employees to sign. *Id.* at ¶ 2.15, 2.16. When Plaintiff pointed out that the list did not include a commitment to abide by the company's zero-tolerance weapons policy, the Vice President responded that such a commitment "was not going to happen." ¶ 2.17. At this point, Plaintiff decided to leave the company and submitted two weeks' notice of his intent to leave his employment with Superior. ¶ 2.18. He claims he was terminated by the company prior to the expiration of his notice. *Id.*

Plaintiff initiated this action in the Superior Court of the State of Washington for King County and it was removed by motion of Defendant to this Court on February 7, 2019. Dkt. No. 2-1 at 5. As stated above, Plaintiff states three causes of action: (1) willful withholding of wages, (2) wrongful termination in violation of public policy, and (3) sex discrimination. Dkt No. 2, Ex. 1. Defendant moved to dismiss the latter two causes of action. Dkt. No. 8. After striking this initial motion to dismiss based on the parties' failure to confer in accordance with the Court's Standing order, Dkt. No. 16, Defendant filed largely the same motion to dismiss, this time, however, with the required certificate of conferral. Dkt. No. 20.

### III.  LEGAL STANDARDS

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need

3

not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553–56 (2007).

## IV. DISCUSSION

As stated above, Defendant moves to dismiss Plaintiff's claim for wrongful termination in violation of public policy, as well as Plaintiff's sex discrimination claim. The Court will address each claim in turn.

### A. Wrongful Termination in Violation of Public Policy

The first of Plaintiff's causes of action which Defendant seeks to dismiss is the charge of wrongful termination in violation of public policy. Dkt. No. 20 at 5–8. Plaintiff contends that he was terminated before the expiration of his notice "because he inquired about [Superior's] firearm policies" and that the termination violated "clear public policies regarding the possession of firearms." Dkt. No. 2, Ex. 1 at ¶ 3.5, 3.7. Defendant counters that Plaintiff fails to identify a sufficiently determinable public policy or, in the alternative, if such a policy exists, Plaintiff's termination did not jeopardize it. Dkt. No. 20 at 6–8. The Court finds that Defendant's argument as to the lack of a clear public policy is correct and, for that reason, does not proceed to the jeopardy inquiry.

Washington recognizes an exception to the general principle that "absent a definite contract, employees are terminable at-will," in the form of the wrongful termination or "discharge" against public policy tort. *Rose v. Anderson Hay and Grain Co.*, 358 P.3d 1139, 1141 (Wash. 2015); *see also Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1089 (Wash. 1984) (first recognizing the tort). To establish such a claim, a Plaintiff must prove "(1) [] the existence of a clear public policy (the clarity element); (2) [] that discouraging the conduct in which [he or she] engaged would jeopardize the public policy (the jeopardy element); [and] (3) []

4

that the public-policy-linked conduct caused the dismissal (the causation element)." *Rose*, 358 P.3d at 1148. Once those elements have been met, the burden shifts to the Defendant to "offer an overriding justification for the dismissal (the absence of justification element)." *Id.*[1]

It is the first element, that of clarity, which Plaintiff fails to establish. Plaintiff bears the burden of showing that a "clear statement of public policy exists," *Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*, 257 P.3d 586, 596 (Wash. 2011) (citing *Hubbard v. Spokane County*, 50 P.3d 602, 607 (Wash. 2002), and the question of whether a public policy exists is a question of law, *Sedlacek v. Hillis*, 36 P.3d 1014, 1018 (Wash. 2001) (citing *Dicomes v. State*, 782 P.2d 1002, 1006 (Wash. 1989)).

The Washington Supreme Court has repeatedly cautioned that the tort of wrongful discharge in violation of public policy is a narrow exception to at-will employment in Washington State and will only arise if there is a "clear mandate of public policy." *Sedlacek v. Hillis*, 36 P.3d at 1017; *Dicomes*, 782 P.2 at 1006; *Thompson*, 685 P.2d at 1089. The Washington Supreme Court has further cautioned that the "Legislature is the fundamental source for the definition of this state's public policy" and the judiciary must "avoid stepping into the role of the Legislature by actively creating the public policy of Washington." *Sedlacek*, 36 P.3d at 1019; *see also Gardner v. Loomis Armored Inc.*, 913 P.2d 377, 380 (Wash. 1996) ("courts should proceed cautiously if called upon to declare public policy absent some prior legislative or

---

[1] Washington primarily recognizes the availability of the wrongful termination in violation of public policy tort in four situations, "(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing." *Gardner*, 913 P.2d at 379 (citing *Dicomes*, 782 P.2d at 1006 (Wash. 1989)). Where, as here, a plaintiff does not allege a "common retaliatory discharge scenario," a more "refined analysis" must be conducted under the previously iterated standard. *Rose*, 358 P.3d at 1142.

judicial expression on the subject"). Thus, this Court is bound to recognize "only clearly existing public policy under Washington law." *Sedlacek*, 36 P.3d at 1020.

In seeking to establish that a public policy against employees bringing firearms to their place of employment exists, Plaintiff points to: (1) the Washington Industrial Safety and Health Act ("WISHA"), WASH. REV. CODE § 49.17, Washington's statutory regime protecting employees in their workplace, WASH. REV. CODE § 49.17, and (2) the Washington's legislative framework regarding ownership and use of firearms, WASH. REV. CODE § 9.41. Dkt. No. 21 at 7–8. A review of both, however, reveals no definite public policy prohibiting employees from bringing firearms to their workplace.

First, as it regards WISHA, and its related Administrative Code, WASH. ADMIN. CODE § 296-800, neither mentions firearms. Specifically, Plaintiffs point to WASH. REV. CODE § 49.17.010 (stating the purpose of WISHA, including the "safe and healthful working conditions for every man and woman working in the state of Washington"); WASH. ADMIN. CODE § 296-800-11005 (employers must provide "a workplace free from recognized hazards"); WASH. ADMIN. CODE § 296-126-094 (employers must "maintain conditions within the work place environment that will not endanger the health, safety or welfare of employees"); and WASH. ADMIN. CODE § 296-800-11035 (employers must "establish, supervise, and enforce rules that lead to a safe and healthy work environment that are effective in practice"). Dkt. No. 21 at 7–8. Such general statements of policy do not clearly identify a public policy that addresses firearms in the workplace, let alone a public policy that clearly prohibits firearms in the workplace. *See Rose*, 358 P.3d at 1142 (the strict clarity requirement "ensures that only clear violations of important, recognized public policies could expose employers to liability").

Alternatively, Plaintiff points to Washington's legislative framework addressing ownership and use of firearms, WASH. REV. CODE § 9.41. Dkt. No. 21 at 8. Parallel to WISHA's lack of reference to firearms in employment regulations, review of the Code finds no reference to places of employment in the firearms regulation. In fact, WASH. REV. CODE § 9.41.300 specifically addresses locations in which a person may not enter with a firearm, including jails, courts, mental health facilities, and airports—places of employment are not included on this list. Indeed, Washington law prohibits municipalities and localities from further limiting places in which firearms are not permitted, WASH. REV. CODE § 9.41.290 ("[c]ities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW 9.41.300"), showing a legislative intent to narrowly define such locations. *See Chan v. City of Seattle*, 164 Wash. App. 549, 562 (Wash. Ct. App. 2011) (holding that the City of Seattle's attempt to regulate the possession of firearms in designated parks was preempted by State law). As such, this Court will "avoid stepping into the role of the Legislature" by expanding the prohibition of firearms in certain locations beyond its statutory bound. *Sedlacek*, 36 P.3d at 1019.

Therefore, Plaintiff has failed to identify a clear expression of public policy against firearms in the workplace. As such, the wrongful discharge in violation of public policy exception to at-will employment is not applicable. Plaintiff's wrongful termination claim must be dismissed.

## B. Sex Discrimination

Next, Defendant seeks to dismiss Plaintiff's allegation of sex discrimination.[2] Dkt. No. 20 at 9–10. Plaintiff's claim stems from his interaction with his office administrator, in which she allegedly verbally assaulted him for reporting his coworker's unholstered firearm to the company's headquarters. Dkt. No. 1, Ex. 2 at ¶ 2.13. He claims disparate treatment based on his manager's assertion that he would have been terminated had he behaved in the same manner as the administrator, where she was not. Dkt. No. 1, Ex. 2 at ¶ 3.12, 3.13. In addition to his claim that he was terminated based on his reporting of his coworker's firearm, he claims that "[a]nother reasonable inference is that [Superior] terminated [Plaintiff] because he was not female." Dkt. No. 21 at 3.

Defendant responds that Plaintiff fails to plead sufficient facts to sustain a charge of sex discrimination, either under Federal or Washington State law, based on an inability to show that he was treated differently because of his sex and that such disparate treatment was the basis for his termination. *See, e.g.*, Dkt. No. 20 at 2; *id.* at 9–10. The Court finds that Plaintiff has not sufficiently pled a claim of sex discrimination to survive Defendant's Motion to Dismiss.

Title VII prohibits employers from discriminating against an individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). In order to establish a *prima facie* case of disparate treatment discrimination under Title VII, a plaintiff must show "(1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an

---

[2] It is unclear based on review of the Complaint whether Plaintiff's cause of action arises under Washington State law or federal law. Neither is addressed in the Complaint. *See generally* Dkt. No. 1, Ex. 2. Meanwhile, Defendant's Motion to Dismiss addresses only Washington State law, Dkt. No. 20 at 9, and federal law, in the form of Title VII of the Civil Rights Act, is not mentioned until Plaintiff's Response, Dkt. No. 21 at 9. Liberally construing these allegations in a light most favorable to the Plaintiff, the Court will address causes of action under both federal and state law.

8

adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

Similarly, Washington's Law Against Discrimination ("WLAD"), WASH REV. CODE § 49.60, protects employees' rights to be free from discrimination on account of sex. WASH REV. CODE § 49.60.030(1)(a). WLAD itself does not provide the criteria for a *prima facie* claim of discrimination based on disparate treatment, so the Washington Supreme Court has "crafted criteria through case law." *Specialty Asphalt & Constr., LLC v. Lincoln Cty.*, 421 P.3d 925, 932 n.6 (Wash. 2018). In order to sufficiently plead such a claim, a Plaintiff must show "(1) membership in a protected class; (2) the plaintiff was similarly situated to members of the opposite sex, *i.e.*, that he or she was qualified for the position applied for or was performing substantially equal work; (3) because of plaintiff's sex he or she was treated differently than members of the opposite sex." *Marquis v. City of Spokane*, 922 P.2d 43, 52 (Wash. 1996).

Claims under both causes of action, however, are unavailing for the same reason; Plaintiff cannot show actual disparate treatment based on his sex. As Defendant points out, there is no allegation in the Complaint that Plaintiff engaged in the same or similar conduct as the administrator. Dkt. No. 20 at 9; *see generally* Dkt. No. 1, Ex. 2. Therefore, they could not have been similarly situated. *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) ("the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects"); *Marquis*, 922 P.2d at 52 ("the plaintiff must demonstrate that she or he was treated differently than persons of the opposite sex who are otherwise similarly situated"). Or, approaching the allegation from a different angle, his termination could not have been based on disparate treatment because he did not engage in the conduct for which his similarly situated colleague was not fired for; he cursed at no one. The closest he comes to such a showing is his

assertion that "[a]nother reasonable inference is that [Superior] terminated [Plaintiff] because he was not female." Dkt. No. 21 at 3. "Conclusory statements" that serve as support for a plaintiff's "[t]hreadbare recital[] of the elements of a cause of action . . . do not suffice" under FRCP 12(b)(6)'s standard. *Iqbal*, 556 U.S. at 678. Thus, these allegations fail to survive Defendant's Motion to Dismiss because they are not "enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.

For the reasons stated above, the Court will dismiss Plaintiff's claim for sex discrimination.

### C. Leave to Amend

In the event this Court grants Defendant's motion to dismiss, Plaintiff requests leave to amend his complaint. Having determined that it will dismiss two out of three of Plaintiff's causes of action, the Court must now decide whether to grant Plaintiff leave to amend his Complaint. By Court order on March 25, 2019, all amended pleadings were due May 2, 2019. Dkt. No. 15. Plaintiff argues that he should be granted leave to amend pursuant to the liberal standard of FRCP 15. Dkt. No 9–10; FED. R. CIV. P. 15(a)(2) (in all cases other than those in which a party my plead as a matter of course, "[t]he court should freely give leave when justice so requires"). Defendant counters that because this Court's deadline to amend pleading has already passed Plaintiff must show "good cause" for modifying the Court's scheduling order pursuant to FRCP 16 Dkt. No. 23 at 7; FED. R. CIV. P. 16(b)(4) ("[a] schedule may be modified only for good cause and with the judge's consent"). Defendant argues that Plaintiff has not shown good cause or, alternatively, emendation would be futile. Dkt. No. 23 at 7–10. The Court finds that the appropriate standard in this circumstance is that of FRCP 16 and, as the Plaintiff has shown no good cause for his failure to seek leave to amend his Complaint, the Court will dismiss without leave to refile.

10

"Where, as here, a party seeks leave to amend after the deadline set in the scheduling order has passed, the party's request is judged under [FRCP] 16's 'good cause' standard rather than the 'liberal amendment policy' of FRCP 15(a)." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1559 (2018); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015). The "central inquiry" of whether good cause exists "is whether the requesting party was diligent in seeking the amendment." *DRK Photo*, 870 F.3d at 989; *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If the moving party was not diligent, "the inquiry should end." *Johnson*, 975 F.2d at 609.

This case was originally removed from King County on February 7, 2019. Dkt. No. 2-1 at 5. Defendant moved to dismiss the complaint on February 19, 2019, Dkt. No. 8, and, while the motion was struck by the Court on April 2, 2019 for failure to comply with the Court's meet and confer requirement, Dkt. No. 16, the motion nevertheless fairly put Plaintiff on notice of Defendant's arguments as to the deficiencies of his complaint. In fact, Defendant's renewed motion to dismiss is in substantially the same form and includes the same arguments as its original.

Plaintiff asserts that, after the striking of Defendant's original motion, he "tried to discuss his complaint with [Superior], but [Superior] refused to engage in this discussion." Dkt. No. 21 at 10. Defendant's intransigence, however, cannot represent good cause as the Plaintiff was free before the May 2, 2019 deadline to motion the Court for leave to amend his complaint, which the Court would have "freely give[n]." FED. R. CIV. P. 15(a)(2). After all, "[a] party which 'has been aware of the facts and theories supporting amendment since the inception of the action' and has failed to amend despite opportunity to do so has not been diligent." *Ohio Sec. Ins. Co. v. Axis Ins. Co.*, No. 15-civ-5698, 2018 WL 5013774, at *2 (W.D. Wash. Oct. 16, 2018) (quoting *Neidermeyer*

11

*v. Caldwell*, 718 F. App'x 485, 489 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 73 (2018)); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d at 737. As such, the Court dismisses without leave to amend.

## V. CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Defendant's Motion to Dismiss with prejudice. Dkt. No. 20.

DATED this 13th day of June, 2019.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE